Jesse C. INGRAM, Ph.D. and Behavioral Psychology Clinic, P.C., Petitioners,

v.

Louis DEERE, D.O. and Hillvale Medical Group Association d/b/a Hillvale Medical Association, Respondents.

No. 06–0815.

Supreme Court of Texas.

Argued Feb. 16, 2008.

Decided July 3, 2009.

Craig T. Enoch, Melissa Prentice Lorber, Alejandro Sin Valdes, Winstead PC, Karen Nalle Oddo, Llano Estacado Development Co., Roxanne T.L. Wilson, Winstead Sechrest & Minick, P.C., Austin, TX, Royce B. West, West & Gooden, P.C., Dallas, TX, Richard L. Armstrong, Attorney at Law, Larry Kent Hercules, Preston Pointe Centre, Plano, TX, for Petitioner.

Georganna L. Simpson, Law Offices of Georganna L. Simpson, Jeff Forrest Smith, Jeff Forrest Smith, P.C., John V. McShane, McShane Davis & Hance, Dallas, TX, for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice MEDINA, Justice GREEN, and Justice WILLETT joined, in which Justice O'NEILL and Justice BRISTER joined except as to part II.D.5.a, and in which Justice JOHNSON joined except as to part II.D.2.

In this case, we review a court of appeals judgment reinstating a jury verdict finding that Louis Deere, D.O. and Jesse C. Ingram, Ph.D. formed a partnership pursuant to the Texas Revised Partnership Act (TRPA).

TRPA lists five factors to be considered in determining whether a partnership has been formed. This determination should be made by examining the totality of the circumstances in each case, with no single factor being either necessary or sufficient to prove the existence of a partnership. Here, the evidence is legally insufficient to establish that a partnership existed between Ingram and Deere. Because the evidence of the formation of a partnership is legally insufficient, we do not address the issue raised in Ingram's cross-petition challenging the court of appeals' decision that Ingram owed Deere a fiduciary duty. Accordingly, we reinstate the trial court's take-nothing judgment in favor of Ingram and reverse the court of appeals' judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ingram, a licensed psychologist, and Deere, a board certified psychiatrist, entered into an oral agreement in 1997, which provided that Deere would serve as the medical director for a multidisciplinary pain clinic. Deere contends that they agreed he would receive one-third of the clinic's revenues, Ingram would receive one-third, and the remaining one-third would be used to pay the clinic's expenses. Deere also claims that when he and Ingram began working together, Ingram told him their work "was a joint venture, or [they] were partners, or [they] were doing this together." Ingram contends that they only agreed Deere would receive one-third of the clinic's revenues and that there was no agreement as to the other two-thirds. Deere acknowledges that, during his time at the clinic, he never contributed money to the clinic, he did not participate in the hiring of any employees, he did not know any of the clinic staff's names, he never purchased any of the clinic's equipment, his name was not on the clinic's bank account, and his name was not on the lease agreement for the clinic space.

Fourteen months after Deere began working at the clinic, Ingram prepared a written agreement to memorialize their arrangement. The document was entitled "Physician Contractual Employment Agreement" and stated that Ingram was the "sole owner" of the clinic. Deere refused to sign the document, claiming that it contradicted their initial arrangement. Immediately after Deere received the document, he ceased working at the clinic.

Deere later sued Ingram, asserting claims of common law fraud, statutory fraud, fraudulent inducement, breach of

contract, breach of fiduciary duty, and declaratory judgment and seeking specific performance, damages, and attorneys' fees. The jury found that Deere and Ingram entered into a partnership agreement and that Ingram breached the agreement and his fiduciary duty to Deere. The trial court entered judgment on the jury verdict awarding damages of (1) $34,249.68 for compensation owed Deere through March 1999, (2) $2,525,437.00 for Deere's share of the partnership's revenue from April 1999 through the time of trial, (3) $2,500,000.00 for Deere's share of revenue to accrue after trial, and (4) $27,500.00 in attorneys' fees for the trial stage with additional fees in the event of a motion for new trial and various appeals.

Ingram filed a motion for judgment non obstante veredicto (judgment n.o.v.). After a hearing, Judge David Evans signed a new judgment, eliminating a portion of the damages awarded by the jury and reducing the award of attorneys' fees. Following his decision, Judge Evans recused himself without explanation, and the case was assigned to Judge Merrill Hartman. Ingram then filed a second motion for judgment n.o.v. or, in the alternative, a motion for new trial. Judge Hartman signed a judgment n.o.v. and rendered a take-nothing judgment in Ingram's favor.

The court of appeals reversed the trial court's take-nothing judgment on the second motion for judgment n.o.v. and reinstated the trial court's judgment on the first motion for judgment n.o.v. The court held that Ingram waived his right to challenge the existence of a partnership because he failed to raise the issue in his second motion for judgment n.o.v. 198 S.W.3d 96, 100. Without discussing whether Deere and Ingram created a partnership, the court held that there was legally sufficient evidence to support the jury's finding that the partnership continued to exist through the time of trial. *Id.* at 101–02. However, the court affirmed the trial court's ruling that Ingram did not owe Deere a fiduciary duty, as there was no evidence of a confidential relationship between Deere and Ingram that would give rise to an informal fiduciary duty. *Id.* at 102–03. On appeal to this Court, Ingram argues that the court of appeals erred in reinstating the trial court's judgment on the first motion for judgment n.o.v. because there is no evidence that Deere and Ingram created a partnership. Deere principally contends that Ingram waived all of the alleged errors in one way or another at the trial court. Deere also filed a cross-petition appealing the court of appeals' adverse ruling on his breach of fiduciary duty claim.[1] Because we conclude there is no evidence of a partnership, we do not reach the other issues raised by Deere or Ingram.

## II. LAW AND ANALYSIS

### A. Preservation of Error

■ As an initial matter, we must address Deere's contention that Ingram failed to preserve his no evidence argument regarding the existence of a partnership. First, Deere argues Ingram failed to

---

1. The only argument Deere makes to this Court in support of his claim that Ingram breached a fiduciary duty he owed to Deere is that such a duty arose by virtue of their partnership. *See* Tex.Rev.Civ. Stat. art. 6132b-4.04 (recognizing the unwaivable duties of care and loyalty and the obligation of good faith required of partners under the Texas Revised Partnership Act); *see also Bohatch v. Butler & Binion,* 977 S.W.2d 543, 545 (Tex. 1998) (recognizing "as a matter of common law that '[t]he relationship between … partners … is fiduciary in character' "). The court of appeals held there was no evidence of a fiduciary relationship between Ingram and Deere. However, we need not address the issue of whether there is independent evidence of a fiduciary duty because we hold there is no legally sufficient evidence that Ingram and Deere were partners.

preserve his no evidence argument because he did not file a verified denial in response to Deere's claim that they were partners, which Texas Rule of Civil Procedure 93(5) requires. It is undisputed that Ingram did not file the requisite verified denial. However, this issue was tried by consent of the parties. When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived. Tex.R. Civ. P. 67; *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445–46 (Tex. 1993).

■ We addressed a similar issue in *Sage Street*. In that case, we discussed whether the trial court should have submitted a contract's ambiguity to the jury, although neither party pleaded it. *Sage St.*, 863 S.W.2d at 444–46. We reiterated the long-standing rule that an issue is "not tried merely by the hearing of testimony thereon." *Id.* at 446 (citing *Harkey v. Tex. Employers' Ins. Ass'n*, 146 Tex. 504, 208 S.W.2d 919, 922 (1948)). However, because *both* parties presented conflicting testimony on the subject and allowed the issue to be raised in the jury charge, the contract's ambiguity was tried by consent. *Id.* Here, not only did both parties present evidence at trial to affirm or controvert the existence of a partnership, but Deere, the party arguing that a partnership existed, also submitted the issue in the jury charge. The issue was developed at trial, and both parties understood that it was contested. Accordingly, the failure to file a verified denial did not preclude Ingram from raising the issue on appeal.

■ Second, Deere argues that error was not preserved because Ingram's motion for a judgment n.o.v. did not assign a no evidence point of error regarding the jury's answer to the partnership question. However, Ingram prevailed on his motion for judgment n.o.v. Thus, as the prevailing party, he need only raise the issue of whether a partnership existed as a cross-point. Tex.R.App. P. 38.2(b). When a trial court renders judgment n.o.v. and the losing party appeals, the prevailing party may also appeal and present points or issues on any ground that would either vitiate the verdict or preclude affirming the judgment and reinstating the verdict, including grounds not raised in the judgment n.o.v. *See id.* (providing that when a trial court renders a judgment n.o.v., "the appellee must bring forward by cross-point *any* issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict" (emphasis added)). This is an exception to the general rule that as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court and that the trial court ruled or refused to rule on the request. *See* Tex.R.App. P. 33.1(a). Because Ingram properly raised the issue to the court of appeals, he did not waive the issue for review by either this Court or the court of appeals.

## B. Standard of Review

■ When reviewing a court of appeals judgment reversing the trial court's judgment n.o.v., we conduct a legal sufficiency analysis of the evidence. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex.2007). We review the evidence presented at trial in the light most favorable to the jury's verdict, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.*

## C. Partnership Law

### 1. Texas Common Law

■ Under the common law, the Court recognized that a partnership or joint enterprise "presupposes an agree-

ment to that end," which could be either express or implied. *Donald v. Phillips*, 13 S.W.2d 74, 76 (Tex.1929). We explained that the "intention of the parties to a contract is a prime element in determining whether or not a partnership or joint venture exists." [2] *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978) (citing *Luling Oil & Gas Co. v. Humble Oil & Ref. Co.*, 144 Tex. 475, 191 S.W.2d 716, 722 (1946) ("[A] court would not declare that a partnership existed unless that intention clearly appeared. . . .")). The common law also considered that profit sharing was the most important factor shedding light on the intention to establish a partnership. *See Friedlander v. Hillcoat*, 14 S.W. 786, 787 (Tex.1890) ("A common interest in the profits is an essential element to constitute a partnership."). These two elements were incorporated into a five-factor test that developed under the common law for partnership formation: (1) intent to form a partnership, (2) a community of interest in the venture, (3) an agreement to share profits, (4) an agreement to share losses, and (5) a mutual right of control or management of the enterprise. *Coastal Plains*, 572 S.W.2d at 287 (citing *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704, 709 (1956), and *Luling Oil & Gas*, 191 S.W.2d at 722). These factors continued to guide the question of partner-

ship formation when Texas promulgated and later amended statutory regimes governing partnerships.

## 2. Texas Statutory Law

The Texas Uniform Partnership Act (TUPA) was passed in 1961 and substantially adopted the major provisions of the Uniform Partnership Act (UPA), which itself was adopted in every state except Louisiana after it was approved by the National Conference of Commissioners on Uniform State Laws in 1914. *See* Harry J. Haynsworth, IV et al., *Should the Uniform Partnership Act Be Revised?*, 43 BUS. LAW. 121, 121 (1987); REVISED UNIF. P'SHIP ACT, 6 U.L.A. 45 (1997). TUPA was replaced by TRPA, effective January 1, 1994,[3] the result of a project of the Partnership Law Committee of the State Bar of Texas Section on Business Law and the Texas Business Law Foundation. Act of May 31, 1993, 73rd Leg., R. S., ch. 917, § 1, 1993 Tex. Gen. Laws 3887, 3893. TRPA carried forward some of the common law modifications in ways relevant to this case that were promulgated in TUPA. The partnership in this case was allegedly formed in 1997. It is uncontested that TRPA governs this dispute; rather, the parties contest whether Deere has proven the existence of a partnership under TRPA.[4]

---

**2.** Prior case law discusses differences between joint ventures and partnerships. We see no legal or logical reason for distinguishing a joint venture from a partnership on the question of formation of the entity. *See Gray v. West*, 608 S.W.2d 771, 776 (Tex.Civ.App.-Amarillo 1980, writ ref'd n.r.e.). In fact, a joint venture that satisfies the definition of "partnership" is a partnership subject to TRPA. TEX.REV.CIV. STAT. art. 6132b–2.02 Comment of Bar Committee. In this case, counsel for both Deere and Ingram used the terms interchangeably during trial.

**3.** UPA was revised in 1997 and renamed the Revised Uniform Partnership Act (RUPA). UNIF. P'SHIP ACT, intro., 6 U.L.A. 5 (2001).

Although Texas has adopted portions of RUPA, it has not adopted the uniform act in its entirety. *Id.* at 45.

**4.** Three statutory regimes have governed partnerships formed in Texas—TUPA, TRPA, and the Texas Business Organizations Code (TBOC). TRPA, enacted in 1993, replaced TUPA. Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 1, 1993 Tex. Gen. Laws 3887, 3893. TRPA governs partnerships formed on or after January 1, 1994, and other, existing partnerships that elected to be governed by it. TEX.REV.CIV. STAT. art. 6132b–11.03(a). In 2003, the TBOC replaced TRPA. Act of May 29, 2003, 78th Leg., R.S., ch. 182, § 1, 2003 Tex. Gen. Laws 267, 592–93. The TBOC gov-

TRPA provides that "an association of two or more persons to carry on a business for profit as owners creates a partnership." Tex.Rev.Civ. Stat. art. 6132b–2.02(a). Unlike TUPA,[5] TRPA articulates five factors, similar to the common law factors, that indicate the creation of a partnership. They are:

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) sharing or agreeing to share:

(A) losses of the business; or

(B) liability for claims by third parties against the business; and

(5) contributing or agreeing to contribute money or property to the business.[6] *Id.* art. 6132b–2.03(a). The common law required proof of all five factors to establish the existence of a partnership. *See Coastal Plains*, 572 S.W.2d at 287. However, TRPA contemplates a less formalistic and more practical approach to recognizing the formation of a partnership.

 First, TRPA does not require direct proof of the parties' intent to form a partnership. Tex.Rev.Civ. Stat. art. 6132b–2.02 (stating that two or more persons may form a partnership regardless of "whether the persons intend to create a

---

erns partnerships formed on or after January 1, 2006, and other partnerships that elect to be governed by the TBOC. Tex. Bus. Orgs Code § 402.001. In addition, TRPA and the TBOC contain transition rules, providing that the preceding law will apply to existing partnerships for a period of years after each act's effective date, unless the partnership elects to be governed by the new act immediately. Tex.Rev.Civ. Stat. art. 6132b–11.03; Tex Bus. Orgs.Code § 402.001. On January 1, 2010, TRPA will expire, and the TBOC will apply to all partnerships, regardless of their formation date. Tex.Rev.Civ Stat. art. 6132b–11.03. TRPA and the TBOC's rules for determining partnership formation are substantially the same. *Compare* Tex. Bus. Orgs.Code § 152.052, *with* Tex Rev Civ Stat art. 6132b–2.03.

5. TUPA did not provide a list of considerations or factors that were important or necessary to the establishment of a partnership. With one exception, TUPA only provides rules indicating circumstances that did not give rise to a partnership. TUPA reads as follows:
(1) Except as [otherwise provided] persons who are not partners as to each other are not partners as to third persons.
(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
(a) As a debt by installments or otherwise,
(b) As wages of an employee or rent to a landlord,
(c) As an annuity to a widow or representative of a deceased partner,
(d) As interest on a loan, though the amount of payment vary with the profits of the business,
(e) As the consideration for the sale of a good-will of a business or other property by installments or otherwise.
(5) Operation of a mineral property under a joint operating agreement does not of itself establish a partnership.
Tex.Rev.Civ. Stat. art. 6132b, § 7

6. Four years after TRPA was enacted, Oregon adopted factors almost verbatim to the factors listed in TRPA for determining whether a partnership exists. Or.Rev.Stat. § 67.055 (2008). Oregon and Texas are the only states to enact a statute that deviates from the UPA's rules for determining the existence of a partnership.

partnership"). Formerly, the intent to be partners was a "prime," although not controlling, element in the creation of a partnership. *Coastal Plains,* 572 S.W.2d at 287. Instead, TRPA lists the "expression of intent" to form a partnership as a factor to consider. TEX.REV.CIV. STAT. art. 6132b–2.03(a)(2). Second, unlike the common law, TRPA does not require proof of *all* of the listed factors in order for a partnership to exist. Third, sharing of profits—deemed essential for establishing a partnership under the common law—is treated differently under TRPA because sharing of profits is not required. *Cf. Friedlander,* 14 S.W. at 787 ("A common interest in the profits is an essential element to constitute a partnership."). Still, TRPA comments note that the traditional import of sharing profits as well as control over the business will probably continue to be the most important factors. TEX.REV.CIV. STAT. art. 6132b–2.03 Comment of Bar Committee. Additionally, TRPA recognizes that sharing of losses may be indicative of a partnership arrangement but states that such an arrangement is "not necessary to create a partnership." *Id.* art. 6132b–2.03(c). TRPA also restates and extends the list of circumstances in TUPA that do not by themselves indicate that a person is a partner.[7] *Id.* art. 6132b–2.03(b).

▪ The question of how many of the TRPA factors are required to form a partnership is a matter of first impression for this Court. The TRPA factors seem to serve as a proxy for the common law requirement of intent to form a partnership by identifying conduct that logically suggests a collaboration of a business's purpose and resources to make a profit as partners. After examining the statutory language and considering that TRPA abrogated the common law's requirement of proof of all five factors, we determine that the issue of whether a partnership exists should be decided considering all of the evidence bearing on the TRPA partnership factors. While proof of all five common law factors was a prerequisite to partnership formation under the common law, the totality-of-the-circumstances test was, in some respect, foreshadowed in Texas case law. As Justice Jack Pope wrote for the San Antonio Court of Appeals,

> No single fact may be stated as a complete and final test of partnership.

---

7. According to TRPA, "[one] of the following circumstances, by itself, does not indicate that a person is a partner in the business":

(1) the receipt or right to receive a share of profits:
 (A) as repayment of a debt, by installments or otherwise;
 (B) as payment of wages or other compensation to an employee or independent contractor;
 (C) as payment of rent;
 (D) as payment to a former partner, surviving spouse or representative of a deceased or disabled partner, or transferee of a partnership interest;
 (E) as payment of interest or other charge on a loan, regardless of whether the amount of payment varies with the profits of the business, and including a direct or indirect present or future ownership interest in collateral or rights to income, proceeds, or increase in value derived from collateral; or
 (F) as payment of consideration for the sale of a business or other property by installments or otherwise;
(2) co-ownership of property, whether in the form of joint tenancy, tenancy in common, tenancy by the entireties, joint property, community property, or part ownership, whether combined with sharing of profits from the property;
(3) sharing or having a right to share gross returns or revenues, regardless of whether the persons sharing the gross returns or revenues have a common or joint interest in the property from which the returns or revenues are derived; or
(4) ownership of mineral property under a joint operating agreement.
TEX.REV.CIV. STAT. art. 6132b–2.03(b).

Each case must rest on its own particular facts and the presence or absence of the usual attributes of a partnership relation. The earlier Texas rule indicated that profit sharing was the controlling test. We think it is now generally held that such a test is not all-inclusive and controlling.... The absence of an express provision obligating the parties to share in the losses is also important and indicates that no partnership existed. But this feature too is not controlling. *Davis v. Gilmore*, 244 S.W.2d 671, 673–74 (Tex.Civ.App.–San Antonio 1951, writ ref'd) (citations omitted). Many states apply this totality-of-the-circumstances test.[8]

**8.** *McCrary v. Butler*, 540 So.2d 736, 739 (Ala. 1989) (stating that "[t]here is no arbitrary test as to whether a partnership exists, but such a determination will be made upon all of the attendant circumstances"); *Tripp v. Chubb*, 69 Ariz. 31, 208 P.2d 312, 314 (1949) (stating that "the question of the existence of a partnership depends upon the intention of the parties," which "must be ascertained from all of the facts and circumstances and the action and conduct of the parties"); *Moon v. Ervin*, 64 Idaho 464, 133 P.2d 933, 937 (1943) (stating that to show a partnership exists, there "must be other facts, showing that relationship to have been the intention of the parties"); *Parish v. Bainum*, 306 Ill. 618, 138 N.E. 147, 149 (1923) (stating that " '[t]he requisites of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services and having a community of interests in the profits' " (quoting *Meehan v. Valentine*, 145 U.S. 611, 618, 12 S.Ct. 972, 36 L.Ed. 835 (1892))); *Potts v. Lux*, 161 Kan. 217, 166 P.2d 694, 697 (1946) (stating that the question of whether a partnership exists "depends in each instance upon the intention of the parties to the arrangement, the terms of the agreement creating their relationship and the facts and circumstances evidencing the manner in which their business affairs are carried on once that relationship has been established"); *Lupien v. Malsbenden*, 477 A.2d 746, 748 (Me.1984) (stating that "[a] finding that the relationship between two persons constitutes a partnership may be based upon evidence of an agreement, either express or implied" ... and " '[n]o one factor is alone determinative of the existence of a partnership' " (quoting *Dalton v. Austin*, 432 A.2d, 774, 777 (Me.1981))); *Cyrus v. Cyrus*, 242 Minn. 180, 64 N.W.2d 538, 541 (1954) (stating that a partnership exists "if the evidence as a whole reasonably shows that the parties have entered into a contractual relation whereby they have combined their property, labor, and skill in an enterprise or business as co-owners for the purpose of joint profit"); *Smith v. Redd*, 593 So.2d 989, 994 (Miss.1992) (stating that "[a]n expressed agreement is not required; intent may be implied, or established from the surrounding circumstances"); *Temm v. Temm*, 354 Mo. 814, 191 S.W.2d 629, 632 (1945) (stating that "[s]ince partnership rests on the intention of the parties each case must be determined upon its own particular facts"); *In re KeyTronics*, 274 Neb. 936, 744 N.W.2d 425, 441 (2008) (stating that "[t]he five indicia of co-ownership are only that; they are not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership"); *Eggleston v. Eggleston*, 228 N.C. 668, 47 S.E.2d 243, 247 (1948) (stating that a "[p]artnership is a legal concept, but the determination of the existence or not of a partnership ... involves inferences drawn from an analysis of 'all the circumstances attendant on its creation and operation' " (quoting *Helvering v. Clifford*, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788 (1940))); *Ins. Agents, Inc. v. Zimmerman*, 381 N.W.2d 218, 220 (S.D.1986) (stating that "since there is no arbitrary test for determining the existence of a partnership, each case must be governed by its own peculiar facts" (quoting *Munce v. Munce*, 77 S.D. 594, 96 N.W.2d 661, 663 (1959))); *Harman v. Rogers*, 147 Vt. 11, 510 A.2d 161, 163 (1986) (stating that "[i]n deciding whether a partnership has been created by tacit agreement, courts must examine the facts to determine whether the parties carried on as co-owners of a business for profit"); *Cooper v. Knox*, 197 Va. 602, 90 S.E.2d 844, 847 (1956) (stating that " '[n]o one factor or circumstance can be taken as a conclusive criterion, but each case must be determined upon its own particular facts and surrounding circumstances' " (quoting 68 C.J.S., *Partnership*, § 30)); *Pruitt v. Fetty*, 148 W.Va. 275, 134 S.E.2d 713, 716 (1964) (stating that "[t]here is no general rule applicable in determining or ascertaining the question of partnership ... but each case must be governed by its own facts and surrounding cir-

We note the difficulty of uniformly applying a totality-of-the-circumstances test, *see Perry Homes v. Cull,* 258 S.W.3d 580, 592 (Tex.2008) (explaining the difficulty of applying a totality-of-the-circumstances test in determining whether a party waived an arbitration clause in a contract), but we cannot ignore the Legislature's decision to codify the essential common law partnership factors in TRPA without specifying that proof of all or some of the factors is required to establish a partnership. *See* Tex.Rev.Civ. Stat. art. 6132b–2.03; *In re M.N.,* 262 S.W.3d 799, 802 (Tex.2008) (explaining that courts presume that the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted). Yet, we can provide additional guidelines for this analysis. Of course, an absence of any evidence of the factors will preclude the recognition of a partnership under Texas law. *Cf. Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997) (applying TUPA). Even conclusive evidence of only one factor normally will be insufficient to establish the existence of a partnership.[9] To hold otherwise would create a probability that some business owners would be legally required to share profits with individuals or be held liable for the actions of individuals who were neither treated as nor intended to be partners. *See* Tex.Rev.Civ. Stat. art. 6132b–3.03(a) (explaining that a partnership is liable for the acts of a partner done with authority or in the ordinary course of the partnership's business); *see also Kao Holdings, L.P. v. Young,* 261 S.W.3d 60, 63

(Tex.2008). The Legislature does not indicate that it intended to spring surprise or accidental partnerships on independent business persons, if, for example, an employee is paid out of business profits with no other indicia of a de facto partnership under TRPA. On the other end of the spectrum, conclusive evidence of all of the TRPA factors will establish the existence of a partnership as a matter of law. The challenge of the totality-of-the-circumstances test will be its application between these two points on the continuum.

### D. Existence of a Partnership

In this case, we consider whether more than a scintilla of evidence of any of the factors indicative of a partnership was introduced at trial.

### 1. Profit Sharing

 Deere argues that he received or had the right to receive a share of the clinic's profits because he and Ingram had an agreement in which each of them would receive one-third of the clinic's "gross revenue" and the remainder would be used for expenses. It is true that the "receipt or right to receive a share of profits of the business" may be indicative of the existence of a partnership under TRPA, but a share of profits paid as "wages or other compensation to an employee or independent contractor" is not indicative of a partnership interest in the business. Tex.Rev. Civ. Stat. art. 6132b–2.03(b)(1)(B); *see Friedlander,* 14 S.W. at 788; *Strawn Nat'l Bank v. Marchbanks,* 74 S.W.2d 447, 449

cumstances"); *P & M Cattle Co. v. Holler,* 559 P.2d 1019, 1022 (Wyo.1977) (stating that "the question of whether ... a [partnership] exists must be gathered from the conduct, surrounding circumstances and the transactions between the parties").

9. In closing argument, Deere's counsel told the jury that a partnership could be estab-

lished by finding proof of only one factor. He argued, "A joint venture is a partnership too, you know. [The judge] put 'ors' after all these elements. You don't have to have all of them ladies and gentlemen, you can have any one of them, or you can have two of them, or you can have three of them...." There was no objection to the charge on this point.

(Tex.Civ.App.-Eastland 1934, writ ref'd) (saying that the "oft-repeated quotation 'profits as profits'" ... "is to utter jargon" because they are not profits when paid as compensation for services).

The evidence does not establish that Deere received a share of profits as contemplated under TRPA for two reasons. First, the agreement between Ingram and Deere cannot constitute Deere's receipt of "profits," but rather of gross revenue. Because TRPA does not define the term "profits," we define it using its ordinary meaning. TEX. GOV'T CODE § 312.002; *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121–22 (Tex.1996); *Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex.1976). The ordinary meaning of "profits" is "[t]he excess of revenues over expenditures in a business transaction." BLACK'S LAW DICTIONARY 1246 (8th ed.2004). Furthermore, this Court, interpreting similar language in TUPA, established that the receipt of gross revenue is not profit sharing. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 176 (interpreting TUPA, TEX.REV.CIV. STAT. art. 6132b, § 7(3), and explaining that "[e]ntitlement to a royalty based on gross receipts is not profit sharing."). There is no evidence that the allocation for expenses was sufficient to satisfy all the clinic's expenses, leaving only profits to be split. Even if some funds may have been reserved for expenses, as Deere claims, there is no evidence that Deere's share would have decreased if expenses grew or increased if expenses shrank. Simply put, Deere's share depended on the clinic's receipts, not its excess of revenues over expenditures. Therefore, the evidence in this case leads to one conclusion: Deere did not share the clinic's profits but agreed to and received a percentage of the clinic's gross revenues.

Second, Ingram wrote twenty checks to Deere as compensation from January 1997 until March 1999. These checks referred to Deere as a "medical consultant" and the payments as "contract labor." Therefore, they contradict his argument that he received profits as a partner in the clinic. Under TRPA, receipt of profits as compensation for an employee's services or an independent contractor's work is not evidence that parties were partners. TEX.REV.CIV. STAT. art. 6132b–2.03(b)(1)(B); *Strawn Nat'l Bank*, 74 S.W.2d at 449. Because Deere cashed the checks without challenging the characterizations, this fact also does not support his argument.

### 2. Expression of Intent to Be Partners

"[E]xpression of an intent to be partners in the business" is one of five factors courts use in determining whether a partnership exists. TEX.REV.CIV. STAT. art. 6132b–2.03(a)(2). This is different from the common law definition of a partnership that required proof that the parties intended to form a partnership at the outset of their agreement. *Coastal Plains*, 572 S.W.2d at 287 (citing *Luling Oil & Gas*, 191 S.W.2d at 722); *cf.* TEX.REV.CIV. STAT. art. 6132b–2.02 ("An association of two or more persons to carry on a business for profit as owners creates a partnership, *whether the persons intend* to create a partnership ...." (emphasis added)). Conversely, TRPA evaluates the parties' *expression* of intent to be partners as one factor, TEX.REV.CIV. STAT. art. 6132b–2.03(a)(2), and it does not by its terms give the parties' intent or expression of intent any greater weight than the other factors, *see* TEX.REV.CIV. STAT. art. 6132b–2.03(a).

When analyzing expression of intent under TRPA, courts should review the putative partners' speech, writings, and conduct. While under the common law, evidence probative on other factors is considered evidence of "intent," under TRPA, the "expression of intent" factor is

an inquiry separate and apart from the other factors. Courts should only consider evidence not specifically probative of the other factors. In other words, evidence of profit or loss sharing, control, or contribution of money or property should not be considered evidence of an expression of intent to be partners. Otherwise, all evidence could be an "expression" of the parties' intent, making the intent factor a catch-all for evidence of any of the factors, and the separate "expression of intent" inquiry would be eviscerated. Such an interpretation would undermine the language of TRPA, which establishes five separate factors to be considered when determining the existence of a partnership. *See* TEX.REV.CIV. STAT. art. 6132b–2.03.

■ Evidence of expressions of intent could include, for example, the parties' statements that they are partners, one party holding the other party out as a partner on the business's letterhead or name plate, or in a signed partnership agreement. *See Reagan v. Lyberger*, 156 S.W.3d 925, 928 (Tex.App.-Dallas 2005, no pet.) (interpreting TRPA and holding that evidence was sufficient to support a jury finding of the existence of a partnership where, among other evidence, the plaintiff testified that he referred to the defendant as his business partner and other witnesses stated that the defendant identified himself as the plaintiff's partner); *Brewer v. Big Lake State Bank*, 378 S.W.2d 948, 951 (Tex.Civ.App.-El Paso 1964, no writ) (explaining that a party introducing a person to the bank as the party's partner is evidence of the existence of a partnership).

■ The terms used by the parties in referring to the arrangement do not control, *Coastal Plains*, 572 S.W.2d at 288, and merely referring to another person as "partner" in a situation where the recipient of the message would not expect the declarant to make a statement of legal significance is not enough. *See* TEX.REV.

CIV. STAT. art. 6132b–2.02(a) ("An association of two or more persons to carry on a business for profit as owners creates a partnership, whether the ... association is called a 'partnership,' 'joint venture' or other name."). The term "partner" is regularly used in common vernacular and may be used in a variety of ways. WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1626 (1st ed.1996) (defining "partner" as one who shares in the possession or enjoyment of something with another, one of two or more persons who play together in a game against an opposing side, a husband and wife, or either of a couple who dances together). Referring to a friend, employee, spouse, teammate, or fishing companion as a "partner" in a colloquial sense is not legally sufficient evidence of expression of intent to form a business partnership. *See Murphy v. McDermott Inc.*, 807 S.W.2d 606, 613 (Tex.App.-Houston [14th Dist.] 1991, pet. denied) (explaining that although one party referred to the other party as his partner, this alone did not create a partnership). However, the same terms could constitute legally significant evidence of expression of intent when made in a circumstance that indicates significance to the business endeavor. Thus, courts should look to the terminology used by the putative partners, the context in which the statements were made, and the identity of the speaker and listener.

Deere argues that he expressed his intent to be a partner with Ingram by sharing the clinic's profits and losses and having access to the clinic's records. His evidence of other factors, sharing of profits and losses and control of the business, is insufficient to establish expression of intent. Deere's evidence is also insufficient because there must be evidence that both parties expressed their intent to be partners. TEX.REV.CIV. STAT. art. 6132b–2.03(a) (explaining that "[f]actors indicating that persons have created a partnership in-

clude *their* ... expression of an intent to be partners in the business" (emphasis added)). Because Ingram is the party denying the existence of a partnership, an expression of intent to be partners by Ingram would be of particular interest.

 The evidence of Ingram's expression of intent to be business partners is the following exchange during Deere's trial testimony:

Q. What representations did [Ingram] make to you when you were forming this idea that later turned out to be not true?

A. [Deere] Well, that number one, that this was a joint venture, or that we were partners, or we were doing this together.

Deere's testimony is unclear and gives the alleged arrangement with Ingram three different characterizations—that they were joint venturers, partners, or "were doing this together." It is unclear from this testimony what Ingram believed to be the nature of their relationship. Any significance of Deere's testimony is further obviated because he testified that partner "means some people working together." Accordingly, Deere called the employees he supervised at his clinic "partners." After Deere's counsel explained to him the legal definition of a partnership during his testimony, Deere referred to his trial attorney as his "partner" because he was "depending on [him]."

Deere also testified that the clinic kept its established name after he joined as the medical director, and he and Ingram never discussed a name change. He never signed a lease agreement for the building owned by Ingram where the clinic was housed, was not named on the clinic's bank account, never signed a signature card for the clinic's bank account, and never filed

taxes representing that he was co-owner of the clinic. Additionally, Deere paid his own medical malpractice insurance, which he acknowledged was his common practice when he did contract work. Deere cannot provide the content, context, or circumstances to give any of the alleged expressions of intent legal significance as evidence of a partnership.

### 3. Control

Deere argues he had an equal right to control and manage the clinic's business because, although he was never allowed to see the books and records, he repeatedly requested to see them. He also points to Ingram's testimony that "maybe" Deere viewed the clinic's books on one occasion.[10] Furthermore, Deere argues that he had control because Ingram discussed with him how much the clinic made, the amounts paid to the staff, and the need to hire Ingram's wife as personnel director. No other evidence supports these statements and proves he participated in or had the right to control the clinic's business.

 The right to control a business is the right to make executive decisions. *See Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704, 710 (1956) (noting that evidence of control of the business could be exercising authority over the business's operations); *Guerrero v. Salinas,* No. 13–05–323–CV, 2006 WL 2294578, at *11 (Tex. App.-Corpus Christi Aug. 10, 2006, no pet.) (concluding that evidence of management or control of the business was the right to write checks on the business's checking account); *Tierra Sol Joint Venture v. City of El Paso,* 155 S.W.3d 503, 508 (Tex.App.-El Paso 2004, pet. denied) (noting that a party does not have control of the business if the party does not have control over and

---

**10.** This argument contradicts Deere's trial testimony that he was never allowed to look at the books.

access to the business's books); *Price v. Wrather,* 443 S.W.2d 348, 351–52 (Tex.Civ. App.-Dallas 1969, writ ref'd n.r.e.) (noting that control of the business could be receiving and managing all of the business's assets and monies). However, being sporadically provided information regarding the business does not indicate that Deere had control of or the right to control the business. At most, Deere's evidence demonstrates that Ingram talked with Deere about the business. But owners talk with consultants, employees, accountants, attorneys, spouses, and many others about their businesses, and these conversations do not establish that these people have control of the businesses. Likewise, those same classes of people may have the opportunity to look at the businesses' books, but once again, a review of the books itself is not evidence of control. Deere submitted no evidence that he made executive decisions or had the right to make executive decisions and has shown no evidence of this factor.

### 4. Sharing of Losses and Liability for Third Party Claims

Contrary to the common law, under TRPA an agreement to share losses is not necessary to create a partnership. TEX. REV.CIV. STAT. art. 6132b–2.03(c); *see Coastal Plains,* 572 S.W.2d at 287. Therefore, while under TRPA the absence of an agreement to share losses is not dispositive of the existence of a partnership, the existence of such an agreement could support Deere's argument that a partnership existed between him and Ingram. TEX. REV.CIV. STAT. art. 6132b–2.03(a)(4)(A).

■ According to Deere, he and Ingram agreed that Deere would receive one-third of the clinic's gross revenue, Ingram would receive one-third of the clinic's gross revenue, and the remainder would be used to pay clinic expenses. Deere argues that this agreement determined how losses would be shared, but he testified that there was never a discussion of how expenses in excess of one-third of the clinic's gross revenue would be divided between him and Ingram. The meaning of "net operating losses" is "the excess of operating expenses over revenues, the amount of which can be deducted from gross income if other deductions do not exceed gross income." BLACK'S LAW DICTIONARY 963 (8th ed.2004). Here, Ingram and Deere never discussed what would happen to the allocation if expenses exceeded one-third of the revenue or gross income. They never discussed losses, only expenses. There is no legally cognizable evidence to support the contention that Ingram and Deere agreed to share losses.

### 5. Contribution of Money or Property

Finally, there is no evidence that Deere "contribut[ed] or agree[d] to contribute money or property" to the clinic as a partner. TEX.REV.CIV. STAT. art. 6132b–2.03(a)(5). Deere does not argue that there was any *agreement* that he contribute either money or property to the enterprise. *See Id.* Furthermore, Deere does not contend that he actually contributed money to the clinic. In fact, Deere acknowledged at trial that he did not contribute to clinic renovations or the purchase of medical equipment and supplies and that he did not agree to use his personal resources to pay for any expenses in the operation of the clinic. Rather, Deere's only argument regarding this factor is that he contributed his reputation as property to the alleged partnership.

■ TRPA defines "property" as "all property, real, personal, or mixed, tangible or intangible, or an interest in that property." *Id.* art. 6132b–1.01(15). Reputation is a type of goodwill and may be valuable intangible property. *Tex. & Pac. Ry. Co. v. Mercer,* 127 Tex. 220, 90 S.W.2d 557, 560

(1936). Therefore, an individual's reputation can be property that is contributed to the partnership. However, even if a person lends her good name to a business, she does not automatically become a de facto partner. At a minimum, the putative partner would have to prove that any such value can be distinguished from services rendered or property given as an employee.

#### a. Contribution of Valuable Property

■ Although Deere claims his reputation was a valuable contribution to the alleged partnership, the evidence does not support this assertion. Deere argues that the testimony of Ingram's expert, Ron McClellan, who stated that Deere's reputation was a "benefit to the clinic" and "added value" to the clinic, supports his claim. However, McClellan only testified generally that Deere's reputation could add value to the clinic, and he acknowledged that his statements were unsupported and mere assumptions, stating: "Not knowing Dr. Deere and his reputation, I can only assume." His opinion, therefore, was merely speculation. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232–33 (Tex.2004) (quoting Tex.R. Evid. 401). In order to show that Deere's reputation improved the goodwill of the clinic, McClellan, at a minimum, had to know Deere's reputation in the psychiatric or pain management fields. McClellan admitted he had no such knowledge. *See Taormina v. Culicchia*, 355 S.W.2d 569, 574 (Tex.Civ.App.-El Paso 1962, writ ref'd n.r.e.) (explaining that the measure of goodwill is "the fixed and favorable consideration of customers arising from an established and well-known and well-conducted business").

■ The only other evidence supporting Deere's claim is his unsubstantiated statements given during his testimony that his reputation added value to the clinic. Assuming he is qualified to give an opinion on this matter, his testimony is devoid of support for that conclusion. Deere testified that he did not know how many clients came to the clinic specifically because of his presence and that the clinic's name never changed to highlight his addition to the alleged venture. Moreover, the pain clinic was not marketed using his name. Neither Deere nor McClellan ever explained how Deere's reputation contributed to the clinic's success. *See Mercer*, 90 S.W.2d at 560 (to recover damages for goodwill, issues must be submitted to the jury to obtain findings on the change in value of the business); *Taormina*, 355 S.W.2d at 574 (noting that the witness arrived at a sum for goodwill after an investigation of the business, observation of its operations, and examination of its books).

#### b. Contribution as a Partner

■ Furthermore, there is no evidence that Deere added value to the clinic as a partner and not an employee. Even if we were to assume that Deere contributed quantifiable value and enjoyed a good reputation in the psychiatric or pain management fields, he cannot establish this factor without evidence that the contribution is distinguishable from the contributions of an employee. Employees may contribute to business endeavors by lending their time and reputation, but that is not a contribution to the venture indicative of a partnership interest. Even assuming Deere's reputation was impeccable, nothing indicates that Deere contributed or agreed to contribute to the clinic as a partner and not as an employee. In sum, there is no legally sufficient evidence that Deere contributed property to the multidisciplinary pain clinic that would establish a partnership interest.

### III. CONCLUSION

Whether a partnership exists must be determined by an examination of the total-

ity of the circumstances. Evidence of none of the factors under the Texas Revised Partnership Act will preclude the recognition of a partnership, and even conclusive evidence of only one factor will also normally be insufficient to establish the existence of a partnership under TRPA. However, conclusive evidence of all five factors establishes a partnership as a matter of law. In this case, Deere has not provided legally sufficient evidence of any of the five TRPA factors to prove the existence of a partnership. Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's take-nothing judgment.

Justice JOHNSON filed a concurring opinion.

Justice JOHNSON, concurring.

Deere sued Ingram, claiming they formed a partnership for the purpose of creating an interdisciplinary pain clinic. The jury found they did. The trial court, however, eventually granted Ingram's motion for judgment notwithstanding the verdict and entered a take-nothing judgment. The court of appeals reversed in part, reinstating the jury verdict. 198 S.W.3d 96, 104–05.

In this Court, Ingram claims Deere offered no evidence that a partnership was formed. *See* TEX.REV.CIV. STAT. art. 6132b–2.03(a).

The jury charge contained seven questions. Question One asked

> Did [Deere] and [Ingram] form a joint venture[1] without giving it a name for the purpose of a interdisciplinary pain clinic that included the following terms:
> . . .
> That [Deere] and [Ingram] would each own 50% of the unnamed joint venture;
> . . . .

The jury was also instructed to consider the factors enumerated in the Texas Revised Partnership Act to determine whether a joint venture was created. *See id.* It found that a joint venture was created. Ingram challenges the legal sufficiency of the evidence to support the jury's answer.

I agree that evidence of one factor normally, but not necessarily always, will be legally insufficient to support a partnership finding. The Court says even considering Deere's testimony that Ingram said "this was a joint venture, or that we were partners, or we were doing this together," the evidence is legally insufficient as to any factor, including the factor of intent to form a partnership. I disagree the evidence was legally insufficient to support a finding of intent. After all, the jury *did* determine Deere's testimony was credible. Otherwise, it *could* not have found a joint venture existed.

However, we need not labor over whether Deere's testimony was legally sufficient evidence as to intent to form a partnership. Regardless of such testimony, there was no evidence to support the specific term of ownership percentage included in Question One.

According to the charge, one of the terms Deere had the burden of proving was that he and Ingram "would each own 50% of the unnamed joint venture." Deere did not object to Question One, so sufficiency of the evidence is measured against the charge as it was given. *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000) ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.").

Deere offered no evidence that equal ownership of the business was ever dis-

1. The jury question inquired about a "joint venture." As the Court notes, the parties reference the relationship both as a joint venture and a partnership. At 894 n. 2.

cussed. Certainly there is no evidence that an agreement was reached for the business to be owned equally. Because there is no evidence that Deere and Ingram agreed to each own fifty percent of the allegedly formed joint venture, Deere did not carry his burden of proof under the jury charge. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 618–19 (Tex.2004) (citing *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex.2001)).

For the foregoing reasons, I join the Court's opinion except for Part II–D 2. I also join the Court's holding that the evidence is legally insufficient to support a judgment for Deere and join the Court's judgment.