**Opinion issued March 11, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01017-CV

_____

**STANLEY H. ROSENTHAL, Appellant**

**V.**

**DOHERTY & DOHERTY, L.L.P, PETRO EQUIPMENT, INC., RANDY WEST, GLENN ELLIS, NOVA DRILLING TECHNOLOGIES, INC., BILL WEST PROPERTIES AND BILLY E. WEST, DECEASED, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-77118**

---

## MEMORANDUM OPINION

This appeal arises from a dispute over the responsibility for paying for repairs to a work-over rig owned by appellant Stanley H. Rosenthal. After a bench trial, the trial court awarded some but not all of the damages alleged by Rosenthal,

against some but not all of the defendants. The final judgment also awarded attorney's fees to one defendant who had invoked the settlement procedure of Chapter 42 of the Texas Civil Practice and Remedies Code.

Finding no reversible error, we affirm.

## Background

Rosenthal owned a work-over rig that he used to develop his oil leases. Appellee Petro Equipment, Inc. (Petro) was a company in the business of fabricating and refurbishing oilfield drilling equipment. Rosenthal hired Petro to perform repairs on his rig. Randy West was president of Petro. In managing the company, West was advised by appellee Glenn Ellis, a man whose company controlled 80% of Petro.

Before the work began, Rosenthal and West met to inspect the rig. The two men identified a set of items to be examined and repaired or replaced: the air brakes, the mast, and the cab. West testified that he gave Rosenthal an estimate of $75,000 for this work. He further stated that $75,000 would not have been a reasonable price for a "top to bottom" refurbishment and that he never represented to Rosenthal that Petro would be conducting a complete refurbishment. The parties did not enter into a written contract.

The rig was delivered to Petro in May 2008. As work progressed and the rig was disassembled, Petro discovered additional repair needs. It informed Rosenthal

by phone or in person every time new problems were discovered. In each case, Petro did not proceed without first obtaining approval from Rosenthal for the extra work. Despite the gradual expansion of the scope of the job, Petro's task remained limited to specific equipment and sections of the rig.

The repairs to the rig extended over five months. During this time, Petro sent several invoices to Rosenthal that reflected the increasing costs of the work performed. Rosenthal did not pay these invoices.

By November 2008, Petro had yet to complete the agreed work. Nonetheless, Rosenthal wanted to retake possession of his rig. Petro furnished Rosenthal with a final bill of approximately $300,000, and when he refused to pay, it refused to release the rig. The parties agreed to mediate. Both Ellis and West attended the mediation and negotiated on behalf of Petro.

After mediation, a written settlement agreement was signed whereby Rosenthal would pay $250,000 to Petro, and the company would return the rig to him. As part of the bargain, Petro also furnished a one-year warranty. Under the terms of the warranty, Rosenthal was required to "notify [Petro] in writing of any defect or warranty claim immediately upon discovery and . . . permit [Petro] to inspect the Product so [Petro] may determine its warranty obligations." Of the $250,000 settlement payment, $225,000 was to be tendered to Petro immediately, and the rest was to be held in escrow by the law firm of Doherty & Doherty, LLP

for the purpose of compensating Rosenthal for any expenses he might incur in obtaining repairs covered by the warranty. Unused amounts remaining in escrow would pass to Petro.

Rosenthal retrieved his rig from Petro's yard on November 10. Soon after he had recovered it, his employees encountered serious malfunctions and breakdowns. Rosenthal made a service call to Petro, which dispatched an employee to make the requested repairs. However, Rosenthal paid for some of the parts used from his own funds. On December 12, after a clutch breakdown had rendered the rig unusable, Rosenthal sent a fax to Petro requesting service under the warranty. He did not receive a response and contracted with other companies for this repair, incurring substantial expense. Thereafter, Rosenthal continued to encounter mechanical problems and contracted with third parties for parts and repairs without notifying Petro or anyone associated with Petro.

By the time Rosenthal sent the December 12 fax, Petro had been locked out by its landlord and had ceased operations. West became president of appellee NOVA Drilling Technologies, Inc. On December 26, West, as president of NOVA, sent a letter to Rosenthal notifying him that NOVA had taken over "custodial and service duties" for his rig. NOVA performed the same mechanical work as Petro at the same facilities, used 90% of the same employees, and had the same address, telephone, and fax numbers.

4

The following May, Rosenthal sent a letter to NOVA requesting reimbursement for the parts and repairs he had obtained for his rig from third-party shops. When NOVA refused payment on the grounds that it had not been given an opportunity to make the warranty repairs itself, Rosenthal sought disbursement from the escrow fund.

Doherty & Doherty filed an interpleader claim against Petro and Rosenthal. Rosenthal, by a combined crossclaim and third-party petition, brought claims against Petro, NOVA, and Ellis. Rosenthal alleged that these parties fraudulently induced him to enter into the settlement agreement because they knew that Petro would soon cease operations. He also claimed that Petro had breached the terms of the settlement agreement by failing to meet its warranty obligations.

At the close of trial, the judge entered findings of fact and conclusions of law. He found that the agreement between Rosenthal and Petro was to perform specific repairs to the rig and not to refurbish it so as to make it "good as new." Accordingly, he found that the warranty attached to the settlement agreement covered only work actually performed by Petro and not a complete refurbishment. He further found that the warranty required written notice and an opportunity for Petro to inspect to determine its warranty obligations. He thus concluded that Rosenthal was entitled to recover from the escrow account:

5

(1) the value of parts ($261.49) he furnished to Petro in connection with the service call of November 24, 2008 for which Petro waived the written notice requirement by performing the service, and

(2) his expenses ($4,500.59) incurred in connection with the fax notifying Petro of needed repairs on December 12, 2008, which was properly dispatched but not answered.

However, the judge concluded that Rosenthal was not entitled to recover the expenses incurred thereafter for which no written claim had been submitted to NOVA or Petro.

Additionally, the trial court found that Rosenthal was aware of Petro's precarious financial condition when he entered the settlement and that Petro had the contractual right under the settlement agreement to designate another party to perform the warranty work. It thus concluded that there was no evidence of fraud by any party.

Finally, the trial court found that Rosenthal had rejected settlement offers from Ellis that were significantly more favorable than the take-nothing judgment Rosenthal received against him; the court concluded that Ellis should recover attorney's fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

The trial court entered judgment that Rosenthal have $4,762.08 from the escrow fund and $10,000 in attorney's fees from Petro. All other requested relief

was denied. As part of the judgment, the court also decreed that Ellis recover $30,500.22 in attorney's fees from Rosenthal. Rosenthal appealed.

**Analysis**

Rosenthal argues that the trial court erred by not entering judgment in his favor against NOVA. He claims that he was entitled to a default judgment against NOVA, which failed to file an answer. In the alternative, he argues that the judgment is inconsistent in assigning liability to Petro but not NOVA, as NOVA also refused to authorize the release of escrowed funds.

Rosenthal also challenges the trial court's conclusion that he failed to comply with the notice procedure of the warranty. Rosenthal characterizes the trial court's decision as an implicit holding that he did not satisfy a contractual condition precedent. He contends that failure of a condition precedent was not properly pleaded by Petro or NOVA and should not have been considered by the trial court.

Rosenthal further contends that the trial court erred in assessing damages—that it should have awarded him all of the expenses he incurred in repairing his rig. In support of this position, he argues that the evidence was both legally and factually insufficient to support the trial court's finding that the work to be performed by Petro was limited to specific areas of the rig and was not a complete refurbishment.

7

Finally, in a separate and discrete issue, Rosenthal contends that the trial court erred in awarding attorney's fees to Ellis pursuant to Chapter 42 of the Texas Civil Practice and Remedies Code. Specifically, he argues that Ellis did not file the required declaration invoking the section's procedures before making his settlement offers.

## I. Judgment against NOVA

Rosenthal argues that the trial court should have entered judgment in his favor against NOVA. He claims that because NOVA did not file an answer, the trial court should have entered a default judgment against it. In the alternative, he argues that since NOVA also failed to authorize the disbursement of escrow funds at his request, it should be included in the judgment along with Petro.

## A. Default judgment

Rosenthal argues that the court erred in not entering a default judgment against NOVA. NOVA was served with process and did not file an answer, but Rosenthal never moved for the trial court to enter a default judgment. It is a prerequisite to appellate review that the appellant's complaint was first made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. Since Rosenthal never asked that the trial court enter a default judgment against NOVA, he cannot claim that the trial court erred in not doing so.

8

## B. Failure of condition precedent

Rosenthal contends that the trial court erred in considering whether he had complied with the notice provisions of the warranty as this question concerned compliance with a condition precedent, an affirmative defense that Petro and NOVA failed to raise by verified pleadings.

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). "When a contract provides for a particular form of notice, compliance with such provisions is a condition precedent to invoking the contract rights which are conditioned on the notice." *Emerald Forest Util. Dist. v. Simonsen Constr. Co.*, 679 S.W.2d 51, 54 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *accord Tenn. Gas Pipeline Co. v. Technip USA Corp.*, No. 01–06–00535–CV, 2008 WL 3876141, at \*21 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.).

As a plaintiff suing on a contract, Rosenthal did not have to specifically plead compliance with all conditions precedent. *See* TEX R. CIV. P. 54. Rather, it was enough for Rosenthal merely "to aver generally that all conditions precedent have been performed or have occurred" in his petition. *Id.* Having done so, Rosenthal was required only to prove the occurrence of those conditions precedent "as are specifically denied by the opposite party." *Id.*

Neither Petro nor NOVA filed an answer specifically denying a condition precedent. However, issues not raised by the pleadings may nonetheless be tried be consent. *See Sw. Resolution Corp. v. Watson*, 964 S.W.2d 262, 264 (Tex. 1997) (citing TEX. R. CIV. P. 67). "When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived." *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) (citing TEX. R. CIV. P. 67).

In this case, the parties offered evidence and argument concerning the warranty's notice requirement without objection by Rosenthal. For example, Rosenthal was aggressively cross-examined as to whether and when he gave notice that warrantied repairs were needed. Furthermore, after the testimony had concluded, the trial judge engaged the attorneys in a long colloquy about the law and facts of the case. Emphasizing the significance of the notice issue at trial, he asked Rosenthal's counsel, "From a breach of warranty standpoint, how can there be warranty claims for . . . repairs where your client did not give Petro . . . notice, written notice, as required in the warranty?" As this question illustrates, the issue of notice was tried by consent, and Rosenthal cannot now object to the failure of Petro or NOVA to raise it by verified pleadings. *See Ingram*, 288 S.W.3d at 893; *Watson*, 964 S.W.2d at 264.

## C.    Consistency of the judgment

Rosenthal observes that the trial court "found that some of Rosenthal's requests for payment should have been granted, and awarded attorney's fees against Petro, but not against NOVA." He argues that because his May letter to NOVA requested disbursement of funds from the escrow fund pursuant to the warranty agreement, the court should have entered judgment against Petro and NOVA, jointly and severally.

This argument, however, does not address record evidence from which the positions of Petro and NOVA may be differentiated. Notably, Rosenthal's service call and December 12 fax were addressed to Petro, not NOVA. Moreover, although NOVA gave notice in its December 26 letter that it would begin performing the warranty service, Rosenthal never acted on this information by contacting NOVA to report the repairs sought by the December 12 fax or any of the other breakdowns for which he obtained solutions from third parties. In sum, the trial judge, who found that Petro breached the settlement agreement by failing to honor the request for warranty work contained in the December 12 fax, reasonably could have reached a different conclusion as to NOVA's liability when the fax was not addressed to it and no subsequent communication notified it of a request for warranty service.

We conclude that the trial court did not err by excluding NOVA from the judgment. Furthermore, as we have sustained the trial court's finding that Rosenthal failed to give proper notice under the warranty, it is unnecessary for us to address his challenge to the court's findings as to the scope of the original contract to repair the rig. Regardless of whether the trial court erred in deciding the breadth of the agreed-upon work, the court's holding restricted Rosenthal's damages to expenses for which he gave proper notice. Whatever the ambit of the original undertaking, Rosenthal only furnished notice for a limited set of warranty repairs, and the trial court awarded him damages for the expenses thus incurred.

## II.    Attorney's fees

Rosenthal asserts that the trial court should not have awarded attorney's fees pursuant to the Civil Practice and Remedies Code because Ellis did not comply with Chapter 42's procedures by filing a declaration before making settlement offers.

Chapter 42 of the Civil Practice and Remedies Code allows a party, by complying with certain procedures, to recoup litigation expenses from its adversary if the adversary rejects a settlement offer that proves to be "significantly less favorable" than the ultimate judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 42.004 (West Supp. 2013). The chapter does not apply "until a defendant files a declaration that the settlement procedure allowed by this chapter is available in the

action." *Id.* § 42.002. Once a declaration has been filed, a party may make written settlement offers that the court can later consider in deciding to award litigation expenses. *Id.* §§ 42.003–.004. The statute empowers the Supreme Court of Texas to make implementing rules, which it has done through Rule 167 of the Texas Rules of Civil Procedure. *See id.* § 42.005 (West 2008).

Here, Ellis filed with the court and sent to Rosenthal two documents denominated "Defendant, Glenn Ellis', TRCP Rule 167 Offer of Settlement" and "Defendant, Glenn Ellis', Second TRCP Rule 167 Offer of Settlement." The first document states "Pursuant to the *Texas Rules of Civil Procedure, Rule 167 and Chapter 42 of the Civil Practice and Remedies Code*, Mr. Ellis offers **$7,500.00** to Mr. Stanley Rosenthal . . . to fully and finally settle any and all claims, whether valid or invalid, in Cause No. 2009-77,118 . . . ."

Rosenthal takes the position that the statute requires that a *declaration* be a separate document from a *settlement offer*. He points to the following language in the statute and the implementing rule as evidence that separate documents are contemplated:

> (b)  The rules promulgated by the supreme court must provide:
>   (1)  the date by which a defendant or defendants must file the declaration required by Section 42.002(c);
>   (2)  the date before which a party may not make a settlement offer
>   (3)  the date after which a party may not make a settlement offer .
>     . . .

*Id.*

13

(a) *Defendant's declaration a prerequisite; deadline*. A settlement offer under this rule may not be made until a defendant—a party against whom a claim for monetary damages is made—files a declaration invoking this rule . . . .

Tex. R. Civ. P. 167.2. Additionally, he contends that certain language found in Chapter 42 must be contained in any putative declaration—"that the settlement procedure allowed by this chapter is available in the action"—and that this language is absent from Ellis's settlement offers. *See* Tex. Civ. Prac. & Rem. Code Ann. § 42.002.

We do not agree with Rosenthal that Chapter 42 requires that a party use any specific wording to invoke the procedure. Such a requirement does not appear in the statute. *See id.* The words Ellis used, "Pursuant to the *Texas Rules of Civil Procedure, Rule 167 and Chapter 42 of the Civil Practice and Remedies Code*," were adequate. *Cf. Finley v. J.C. Pace Ltd.* 4 S.W.3d 319, 320 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("The effect of a motion depends on the nature of the instrument. We look to its substance rather than its form." (citation omitted)).

We need not decide whether a document may simultaneously function as a declaration and settlement offer. In this case, it suffices to find that the first document, which Ellis titled "Defendant, Glenn Ellis', TRCP Rule 167 Offer of Settlement" and filed with the court, constituted a declaration invoking Chapter

14

42.[*] Regardless of the sufficiency of the first document by itself, the second document, which Ellis served on Rosenthal and titled "Defendant, Glenn Ellis', Second TRCP Rule 167 Offer of Settlement," qualified as a Chapter 42 settlement offer. Rosenthal's issue is overruled.

### Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack, Justices Massengale and Huddle.

---

[*] *Cf.* TEX. R. CIV. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated"); *Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) ("[W]e look to the substance of a motion to determine the relief sought, not merely to its title.").

15