

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-11-00330-CV

**JOHN SHAVERS AND JENS LORENZ,**

                                            **Appellants**

 **v.**

**SUNBELT EQUIPMENT MARKETING, INC.,**

                                            **Appellee**

_____

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 06-001763-CV-272

---

## MEMORANDUM  OPINION

---

Sunbelt Equipment Marketing, Inc., sued Jens Lorenz and John Shavers in connection with a contract for the leasing and damage to heavy equipment.  Lorenz and Shavers appeal from the trial court's judgment rendered against them on June 6, 2011.  Because Lorenz and Shavers entered a general appearance and participated in a partnership, and because the evidence is sufficient to support Sunbelt's fraud claim for which exemplary damages is available, the trial court's judgment is affirmed.

## BACKGROUND

Jesco Disaster Services was awarded a contract to reclaim a beach in Florida after a hurricane. Sunbelt rented heavy equipment to Jesco for that purpose. Aside from the payment of the freight charges for the initial shipments of equipment, Sunbelt was never paid for the lease of the equipment. Further, the equipment was, in Sunbelt's opinion, abused by Jesco. In 2006, Sunbelt sued Jesco and its partners, Jerry Frank Edwards, a resident of Mississippi, and Jens Lorenz, a resident of Louisiana. Lorenz was served and answered in 2007 and filed a special appearance. Edwards was served, but never answered. Sunbelt amended its petition and added another Jesco partner, John Shavers, a resident of Mississippi, as a defendant. For various reasons, Sunbelt was unable to serve Shavers until 2009. Shavers answered and also filed a special appearance. After a status hearing, the parties were referred to mediation in late 2009. A tentative agreement was reached but ultimately fell through.

In late 2010, Sunbelt was granted a default judgment against Edwards. In January of 2011, Lorenz and Shavers filed a joint motion for summary judgment contesting personal jurisdiction. Sunbelt filed a motion for partial summary judgment on the merits of their claims the next month. Both motions were heard in March. Lorenz's and Shavers' joint motion was denied and Sunbelt's partial summary judgment motion was granted. The parties proceeded to a bench trial a week later, and the trial court rendered a judgment in favor of Sunbelt.

## PERSONAL JURISDICTION

Lorenz and Shavers filed separate briefs on appeal but each contend in their first issue that the trial court erred in denying their special appearances. However, the trial court never ruled on their special appearances. It ruled on their joint motion for summary judgment.

There is a procedural anomaly in this case. And because of this anomaly, Sunbelt argued to the trial court and argues on appeal that Lorenz and Shavers waived their objection to personal jurisdiction and entered a general appearance.

Lorenz and Shavers each filed special appearances: Lorenz on October 11, 2007 and Shavers on April 21, 2009. Within neither document was a request for a hearing. In January of 2011, Lorenz and Shavers filed a joint motion for summary judgment. In the motion, they contended they were "entitled to summary judgment as a matter of law on the issue of the lack of personal jurisdiction over them," that there were "no genuine issues of material fact in the case," and that they raised "the affirmative defense that traditional notions of fair play and substantial justice mandate the courts of the State of Texas do not exercise personal jurisdiction over" them.

When called to task by Sunbelt and, to some extent, the trial court, about the meaning of this motion at the hearing, Lorenz and Shavers replied that filing a motion for summary judgment was the correct procedure. On appeal, Lorenz and Shavers contend that the motion was really just a way to have the special appearance heard. We

disagree and cannot condone the use of a motion for summary judgment in lieu of or as a means to go forward with a special appearance. These are two different procedures with different purposes, different burdens, and different means of review.

*Rule 120a*

Pursuant to Rule 120a of the Texas Rules of Civil Procedure, a special appearance may be made by any party, either in person or by attorney, for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State. TEX. R. APP. P. 120a(1). Any motion to challenge the jurisdiction provided for by Rule 120a is required to be heard and determined before a motion to transfer venue or any other plea or pleading may be heard. *Id*. 120a(2). Every appearance, prior to judgment, not in compliance with this rule is a general appearance. *Id*. 120a(1). As noted above, Lorenz and Shavers each filed a special appearance.

Determining whether a trial court has personal jurisdiction over a defendant presents a question of law subject to de novo review. *BMC Software Belg.,N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the Texas long-arm statute. *Id*.; *Cerbone v. Farb*, 225 S.W.3d 764, 766-67 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The burden of going forward then shifts to the nonresident defendant to negate all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac*

*River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). There is nothing in the rule or in case law that precludes simply requesting a hearing and bringing that request to the notice of the trial court on the filed special appearance in order to receive a determination. The specially appearing defendant must not only request a hearing, but also specifically call that request to the trial court's attention. *Bruneio v. Bruneio*, 890 S.W.2d 150, 154 (Tex. App.—Corpus Christi 1994, no pet.).

### *Summary Judgment*

We also conduct a de novo review of the trial court's decision on a motion for summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). This is where the similarity between a special appearance and a motion for summary judgment ends. The movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 23. However, once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the nonmovant to present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In reviewing a traditional motion for summary judgment, which appears to be what Lorenz and Shavers filed, we must consider

whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). In this type review, we must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 756; *Valence Operating Co.*, 164 S.W.3d at 661.

The most fundamental difference between a hearing on a special appearance and a traditional motion for summary judgment is that normally, summary judgments and partial summary judgments are decisions on the merits that bar relitigation of the case. *See Le v. Kilpatrick*, 112 S.W.3d 631, 634 (Tex. App.—Tyler 2003, no pet.); *Pines of Westbury, Ltd. v. Paul Michael Constr., Inc.*, 993 S.W.2d 291, 294 (Tex. App.—Eastland 1999, pet. denied); *Fite v. King*, 718 S.W.2d 345, 347 (Tex. Civ. App.—Dallas 1986, writ ref'd n.r.e.).

### *General Appearance*

Sunbelt contends that, as a result of Lorenz and Shavers filing a motion for summary judgment, they entered a general appearance. We agree. A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court. *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004); *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). Lorenz and

Shavers chose to file a motion for summary judgment rather than request a hearing on their special appearances. By doing so, they assumed the burden of conclusively establishing the trial court's lack of personal jurisdiction, their "affirmative defense," and that they were entitled to judgment as a matter of law. For a proceeding on a summary judgment motion, Sunbelt had no obligation in response to assert any kind of jurisdictional basis for personal jurisdiction. The burdens of a 120a special appearance do not apply to a summary judgment. Further, had Lorenz and Shavers prevailed on their motion, a summary judgment would have been a final determination and res judicata to the relitigation of any claims which Sunbelt might have arising out of the same subject matter of this lawsuit and which could have been litigated in this case. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). At the very least, by filing the motion for summary judgment, Lorenz and Shavers recognized that Sunbelt's suit was properly pending and sought affirmative relief from the trial court.[1]

---

[1] Had Lorenz and Shavers truly believed that they were merely using a motion for summary judgment to request a hearing for their special appearance, when they appealed the trial court's denial of the motion for summary judgment, they could have provided this Court with an explanation that they were really appealing a special appearance. *See Lorenz v. Sunbelt Equip. Mktg.*, No. 10-11-00078-CV, 2011 Tex. App. LEXIS 3397 (Tex. App.—Waco May 4, 2011, no pet.) (mem. op.). As it was, we were informed by Lorenz and Shavers that they were appealing a plea to the jurisdiction. When we questioned our jurisdiction about non-governmental employees attempting to appeal the denial of a plea to the jurisdiction, we received no response from Lorenz and Shavers. Having received no response, we dismissed the appeal for want of jurisdiction. *Id*. Further, had we been provided with the actual order that denied their motion for summary judgment, we would again have questioned our jurisdiction because the denial of a motion for summary judgment is interlocutory and generally not appealable. *See William Marsh Rice Univ. v. Coleman*, 291 S.W.3d 43, 45 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd); *Espinola v. Latting*, 971 S.W.2d 144 (Tex. App.—Waco 1998, no pet.)

Accordingly, Lorenz and Shavers made a general appearance by seeking relief through a motion for summary judgment. Lorenz's first issue and Shavers' first issue are overruled.

## MOTION FOR CONTINUANCE

Shavers' second issue complains about the trial court's denial of Shavers' oral motion for continuance. Shavers cites to no authority to support this issue. Accordingly, it is improperly briefed, presents nothing for review, and is overruled. *See* TEX. R. APP. P. 38.1(i). *See also Dorton v. Chase*, 262 S.W.3d 396, 400 (Tex. App.—Waco 2008, pet. denied); *Batto v. Gafford*, 119 S.W.3d 346, 350 (Tex. App.—Waco 2003, no pet.).

## SUFFICIENCY OF FINDINGS

In his second issue, Lorenz contends that certain findings of fact entered by the trial court were not supported by legally and factually sufficient evidence. Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

In conducting a legal sufficiency review, we view the evidence in the light most favorable to the verdict, credit favorable evidence if a reasonable juror could, and disregard contrary evidence unless a reasonable juror could not. *City of Keller v. Wilson*,

168 S.W.3d 802, 822, 827 (Tex. 2005). A legal sufficiency issue will be sustained if the record reveals one of the following: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence established conclusively the opposite of the vital fact. *Id*. at 827.

When considering a factual sufficiency challenge, as the reviewing court, we must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-407 (Tex. 1998). We can set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that the judgment is clearly wrong and unjust. *Id*. at 407. We are not a fact finder; accordingly, we may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *Id.*

*Partnership*

Lorenz complains in Subpart A of his second issue that the trial court erred in finding Lorenz and Shavers participated in a partnership.

Sunbelt originally filed suit against Jerry Edwards, a person not a party to this appeal, and Lorenz in their individual capacities and doing business as Jesco Disaster Services. Lorenz filed a general denial; Edwards did not answer. In its first amended

petition, Sunbelt added Shavers as a party and alleged that Lorenz, Shavers, and Edwards, participated in the partnership of Jesco Disaster Services. Shavers ultimately filed a general denial; Lorenz did not amend his initial general denial. *See* Tex. R. Civ. P. 92 ("When the defendant has pleaded a general denial, and the plaintiff shall afterward amend his pleading, such original denial shall be presumed to extend to all matters subsequently set up by the plaintiff.").

The denial of a partnership must be raised by a verified denial. *Id*. 93(5). Lorenz and Shavers never filed a verified denial of the existence of a partnership. Because a verified denial was not filed, the partnership's existence could not be controverted at trial. *See Fincher v. B & D Air Conditioning & Heating Co.*, 816 S.W.2d 509, 512 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *Washburn v. Krenek*, 684 S.W.2d 187, 191 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Lorenz argues in his reply brief that he sufficiently denied the partnership status in his special appearance which was verified, relying on a Corpus Christi court opinion which held that a plea in abatement was adequately presented in a sworn answer although the separate plea was not verified. *See S. County Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 461 (Tex. App.—Corpus Christi 2000, no pet.). We disagree with Lorenz. Unlike the facts of the Corpus Christi case, Lorenz's denial of the partnership was not contained in a sworn answer. Further, a special appearance relates solely to personal jurisdiction, not to the merits of a claim or defense. *See* Tex. R App. P. 120a(1). And, a

denial of a partnership relates to the merits of the plaintiff's claim and has no bearing on personal jurisdiction. Thus, the fact that a denial of a partnership was made in the special appearance which happens to be verified does not satisfy the requirement of Rule 93(5).

Lorenz also argues in his reply brief that the existence of a partnership was tried by consent; therefore, it was placed at issue before the trial court and we can review the sufficiency of the evidence to support it. He relies on the Texas Supreme Court decision in *Ingram v. Deere* in support of his argument. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009). Lorenz is correct that the Supreme Court stated in *Ingram* that "[w]hen both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived." *Id*. But, it also stated that an issue is not tried by consent merely by the hearing of testimony on the issue—it is only done so when both parties present conflicting evidence or testimony and allows the issue to be submitted to the jury. *Id*.

Here, the trial was to the court so no formal issue was submitted. But, J.W. Gully, the owner and president of Sunbelt, testified Lorenz represented to him that Lorenz and Edwards were partners with Shavers in Jesco. On cross-examination, Lorenz questioned Gully about whether any writings indicated Lorenz, Shavers, and Edwards were partners, to which Gully replied, "no." Sunbelt then objected to any testimony or attempts to establish that there was no partnership. Sunbelt specifically

called to the trial court's attention that no sworn denial of the partnership was on file in the case. Sunbelt's objection was overruled. Lorenz then elicited from Gully that neither Shavers, nor Lorenz, nor Edwards were the lessees on the lease agreements. Sunbelt again objected to the questions that appeared to be directed toward the partnership issue and requested a running objection. Sunbelt explained to the court that it was trying to prevent testimony designed to establish there was no partnership when there was no sworn denial of that partnership. A running objection was given. Lorenz further elicited that neither Lorenz nor Shavers signed a guaranty and that Shavers did not sign the lease in his individual capacity.

This was all that was presented. After reviewing the testimony, we find the issue of the existence of a partnership was not tried by consent. This testimony was merely the hearing of evidence on an issue and was received over the objection of Sunbelt. The issue of whether Lorenz and Shavers were partners in Jesco was certainly not tried by consent.

After reviewing the evidence under the appropriate standards, we find the evidence is legally and factually sufficient to support the trial court's finding that Lorenz and Shavers participated in a partnership.

*Fraud*

In Subpart B of Lorenz's second issue, Lorenz contends there is legally and factually insufficient evidence to support a finding of fraud; thus, the award of

exemplary damages should be reversed. Lorenz's sole complaint seems to be that there was no or insufficient evidence of an intent not to perform when the lease agreement was made.

A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971). While it is the party's intent at the time the representation was made by the party which must be determined, intent may be inferred from the party's acts after the representation is made. *Spoljaric*, 708 S.W.2d at 434. Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. *Id*. Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made. *Id*. at 435. However, that fact is a circumstance to be considered with other facts to establish intent. *Id*.; *see also Batto v. Gafford*, 119 S.W.3d 346, 348 (Tex. App.—Waco 2003, no pet.). Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *Id*. "Slight circumstantial evidence" of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent. *Id*.; *Batto*, 119 S.W.3d at 348.

J.W. Gully, the owner and president of Sunbelt, testified that Sunbelt leased construction equipment to Jesco Disaster Services to clean small debris from a beach in

Florida after a hurricane. The agreement was that Jesco would pay everything up front. Jesco lead Gully to believe that it was a large company that had multi-million dollar projects all over the country. Gully later learned that this was not true.

In reliance on the representations by Jesco, Sunbelt shipped the equipment to Jesco. The freight charges were paid by Jesco for the first two loads of equipment. After Jesco received the equipment, it was supposed to pay for the first month's rent. Sunbelt did not get paid. As a result, Gully went to the job site to talk to someone about the money. He met with Lorenz and Edwards. Lorenz represented that he and Edwards were partners with Shavers in Jesco. When Gully spoke with Lorenz and Edwards about being paid, they referred him to Shavers. Ultimately, on one occasion, Gully spoke to Shavers who informed Gully that Edwards had been instructed to issue a check for the equipment and that it had been sent. Gully did not receive the check.

Gully testified that he learned the National Park Service had awarded the contract for the beach clean-up to Jesco and that Jesco had been paid $588,000 for the contract. Gully also learned that Jesco incorrectly informed the Park Service that all Jesco's suppliers and subcontractors had been paid when Sunbelt had not been paid.

Gully further testified that had he known Jesco was not going to pay up front as was represented, he would not have rented the equipment to Jesco. He believed that Jesco never intended to pay Sunbelt because after Jesco paid for the freight on the first two units shipped, it never paid anything else. Jesco received the equipment, and in

Gully's words, "abused it, completed the job, got their money; and they never intended to pay anything from then on."

Lorenz argues that because Jesco paid the freight charges for the first shipment, Sunbelt's claim of an intent not to pay is negated. He relies on a case from 14th Court of Appeals in Houston for this proposition. *See IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). However, the opinion in *IKON* did not dispose of the case on this theory. Further in the case relied upon by the *IKON* court for its statement that "[p]artial performance can negate an intent not to keep a promise at the time it was made," the party had performed its obligation for five years before payment ceased. *See Bank One, N.A. v. Stewart*, 967 S.W.2d 419, 445 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). This is not the case here. Jesco owed $68,119.84 for its rental of Sunbelt's equipment. It only paid the freight for the initial delivery of two pieces of equipment. Thereafter, it paid nothing. This initial payment is not the same as paying for five years on a contract. Thus we cannot conclude that it negates an intent not to perform.

After reviewing the evidence in the appropriate standards, we find the evidence legally and factually sufficient to prove an intent not to perform when the promise was made which supports a finding of fraud. Accordingly, Subpart B of Lorenz's second issue is overruled.

## EXEMPLARY DAMAGES

Shavers, in his related third issue, simply argues that the trial court erred in awarding exemplary damages in a breach of contract case. The trial court rendered a judgment on all of Sunbelt's claims. One of those claims was fraud. The only challenge to the fraud claim was to the sufficiency of the evidence to prove an intent not to perform. We overruled that challenge. Because exemplary damages may be awarded for damages which results from fraud, Shavers' third issue is overruled. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (West Supp. 2011).

## CONCLUSION

Having overruled each issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 23, 2012
[CV06]