COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 DANIEL ROJAS,
 CARLA ROJAS, ATM’S OF EL PASO, DANCAR ENTERPRISES, INC., and DOCUMENT
 PROCESSING SYSTEMS, INC.,
  
                             Appellants,
  
 v.
  
 DAVID DUARTE and ELIZABETH DUARTE,
  
                            
 Appellees.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 §
  
 
 
  
  
 No. 08-11-00072-CV
  
 Appeal from the
  
 34th
 Judicial District Court 
  
 of El
 Paso County, Texas 
  
 (TC#2007-2949) 
  
 
 


 

O
P I N I O N

            David Duarte sued Daniel
Rojas alleging that he and Rojas verbally formed a partnership for the purpose of
acquiring and operating ATMs.[1]  Duarte sought to establish the existence of
the partnership and the value of his one-half interest in the partnership.  The jury found that a partnership existed and
that the value of Duarte’s one-half interest was $119,000.  In accordance with the jury’s verdict, the
trial court rendered judgment for Duarte and against Rojas.  Rojas appeals, contending the evidence was
legally insufficient to support the jury’s finding of a partnership and award
of damages.  We affirm, in part, and
reverse and remand, in part.

FACTUAL
AND PROCEDURAL BACKGROUND

Rojas and Duarte
grew up together.  Duarte considered Rojas
his mentor, and Rojas took Duarte under his wing, occasionally helping Duarte find
work.  At one of those jobs, Duarte learned
how to repair, maintain, and program ATM machines.  Duarte knew that Congress had passed
legislation permitting individuals to own and operate ATMs, and when he became
aware that a particular business had several ATMs sitting unused in a
warehouse, he bought one and approached Rojas about acquiring, selling, and operating ATMs together.  At trial, Duarte testified that Rojas assented
to his proposal and that, in the fall of 2002, they agreed to be partners,
splitting profits and liabilities equally and reinvesting profits into the
business.  Rojas, on the other hand,
testified that he and Duarte were not partners and that Duarte was merely
contract labor who helped him operate the ATM business, which he began previously
with his wife.  The business grew handsomely,
but by May 2005 the relationship between Rojas and Duarte had soured to the
point where they agreed to go their separate ways.  Duarte testified that he and Rojas agreed to divide
the partnership’s assets and property equally, with Rojas keeping the ATM’s
located on the West Side of El Paso and in Las Cruces, New Mexico and Duarte keeping
the remaining ATM’s located in El Paso. 
Rojas had his accountant assist Duarte in establishing a corporation,
and Duarte retained the name of the business, ATM’s of El Paso.  The division of assets and property never
occurred, however.  Duarte testified that
after Rojas returned from a trip, Rojas told him that he was keeping all the
ATMs because he needed them to expand into interchange processing, and that,
instead, Rojas was going to give Duarte $1,000 per month until Rojas paid him
out.  Duarte received a grand total of $2,500.

Duarte eventually
sued Rojas.  At trial, Duarte presented
evidence from an expert who opined that the partnership was worth $420,000 as
of December 31, 2008.  At the close of
evidence, Rojas moved for a directed verdict on several bases.  The trial court granted
the motion for directed verdict as to the claims of conversion and punitive
damages, but denied it as to the other claims. 
The trial court did, however, instruct the jury to determine what
the value of Duarte’s partnership interest was as of either May 31, 2005 or
December 31, 2008.  The jury found that
Duarte voluntarily withdrew from the partnership and determined that he had
incurred damages of $119,000.  After
trial, Rojas moved for judgment n.o.v.
on the bases, among others, that there was no evidence that a partnership existed
and no evidence that the value of Duarte’s partnership interest was $119,000 as of May 31, 2005.  The
trial court denied the motion by implication when it signed the final judgment
in favor of Duarte.

STANDARD
OF REVIEW

By three issues, Rojas contends that the
trial court erred by denying its motions for directed verdict and for judgment
n.o.v. because the evidence is legally insufficient to support the
jury’s findings.  We review the trial court’s ruling on a motion for directed verdict under
a legal sufficiency standard.  City of Keller v. Wilson, 168 S.W.3d
802, 823 (Tex. 2005).  Likewise, we
review the trial court’s ruling on a motion for judgment n.o.v. under a legal
sufficiency standard.  Tanner v. Nationwide Mut. Fire Ins. Co.,
289 S.W.3d 828, 830 (Tex. 2009), citing
City of Keller, 168 S.W.3d at 823.

In reviewing the legal sufficiency of the
evidence, we review the evidence in the light most favorable to the jury’s
verdict, crediting evidence favorable to that party if reasonable jurors could,
and disregarding contrary evidence unless reasonable jurors could not.  City of
Keller, 168 S.W.3d at 827.  If more than a “scintilla of evidence”
exists to support the jury’s findings, it is legally sufficient.  City of Keller, 168 S.W.3d at 822.  More than a “scintilla
of evidence” exists when the evidence supporting the finding, as a whole, would
enable reasonable and fair-minded people to differ in their conclusions.  Id.  As the sole judge of the weight and credibility
of the evidence, the jury is entitled to resolve any conflicts in the evidence
and to choose which testimony to believe. 
Id. at 819.  We therefore assume that jurors decided
questions of credibility or conflicting evidence in favor of the verdict if
they reasonably could do so.  Id. at 819, 820.  Accordingly, we do not substitute our
judgment for that of the jurors if the evidence falls within this zone of
reasonable disagreement.  Id. at 822.

EXISTENCE
OF PARTNERSHIP

In his first issue, Rojas argues that the trial
court erred by denying his motions for directed verdict and for JNOV because
“there was no evidence that the parties created a partnership, even if one was
legally possible.”  We disagree.

Applicable Law

Both Rojas and Duarte agree that the
applicable law in this case is the Texas Revised Partnership Act (TRPA), as construed
by the Texas Supreme Court in Ingram v.
Deere, 288 S.W.3d 886 (Tex. 2009).[2]  The TRPA provides that “an association of two
or more persons to carry on a business for profit as owners creates a
partnership . . . .”  Tex.Rev.Civ.Stat.Ann. art.
6132b–2.02(a).  Pursuant to the TRPA,
five factors indicate the creation of a partnership:  (1) receipt or right to receive a share of
profits of the business; (2) expression of an intent to be partners in the
business; (3) participation in or right to participate in control of the
business; (4) sharing or agreeing to share losses or liability; and (5)
contributing or agreeing to contribute money or property to the business.  Tex.Rev.Civ.Stat.Ann.
art. 6132b–2.03(a).

When determining whether a partnership exists
under the TRPA, the fact finder must consider the totality of the circumstances
bearing on the evidence in support of the five statutory factors.  Ingram,
288 S.W.3d at 896.  Under this approach, the evidence, or
lack thereof, in support of the five factors is considered on a continuum.  On one end of the continuum, a partnership
exists as a matter of law when conclusive evidence supports all five statutory
factors.  Id. at 898.  On the other end
of the continuum, a partnership does not exist as a matter of law when there is
no evidence as to any of the five factors, and conclusive evidence of only one
factor will normally be insufficient to establish the existence of a
partnership.  Id.  Points on the
evidentiary continuum between these two ends are where the challenge lies in
applying the totality-of-the-circumstances test.  Id.
at 896. 
As the statutory comments to the TRPA make clear, this is because “it is
not feasible to say exactly which [statutory] factors must be present, or what
the relative weights of the factors should be.” 
Tex.Rev.Civ.Stat.Ann. art.
6132b–2.03 cmt.

Discussion

            We now turn our focus to the evidence
pertaining to each of the five statutory factors to determine whether the
evidence was legally sufficient to support the jury’s finding that Duarte and
Rojas were partners.

1.  Sharing Profits

The first factor is “receipt or right to
receive a share of profits of the business,” a factor that, along with the
right to control, has traditionally been important in determining whether a
partnership exists and “will probably continue to be [one of] the most
important under the [TRPA].”  Tex.Rev.Civ.Stat.Ann. art.
6132b–2.03(a)(1), cmt.  Rojas argues that
“[t]here is no evidence that [Duarte] ever got a nickel from the profits of the
business.”  Instead, Rojas contends that
Duarte was paid as an independent contractor and that, in 2003, he prepared some
“split sheets” to entice Duarte to buy stock in Dancar Enterprises[3] by
showing Duarte what his profits would be if he were to become a
shareholder.  We agree that there is no
evidence that Duarte actually received a share of the profits.  There is evidence in the record, however, of Duarte’s
right to share profits.

Duarte testified that he and Rojas agreed to
be partners, to split profits and liabilities equally, and to reinvest profits
back into the business to support its growth.  Duarte’s testimony that he and Rojas agreed to
split the profits equally is supported by the aforementioned “split sheets”
Rojas prepared for Duarte in 2003.  Each
of the three “split sheets” lists the revenues generated by the business, the
expenses associated with running the business, and the “Total split amount”
allocated to Duarte and Rojas.  Two of
the “split sheets” allocate the net profits to Duarte and Rojas equally.  One of the “split sheets” allocating the net
profits equally has the notation “what we
would have made w/processing à*3,057.70*.” 
[Emphasis added].  And
significantly, nothing in the “split sheets” indicates that they were prepared
for the purpose of enticing Duarte to buy stock in Dancar, as Rojas maintains.  Duarte’s testimony and the “split sheets” prepared
by Rojas constitute more than scintilla of evidence of an agreement to share
profits.

2.  Intent

The second statutory factor is “expression of
an intent to be partners in the business.” 
Tex.Rev.Civ.Stat.Ann. art.
6132b–2.03(a)(2).  “Evidence of
expression of intent could include . . . the parties’ statements that they are
partners,” but “there must be evidence that both parties expressed their intent
to be partners.”  Ingram, 288 S.W.3d at 900.  Rojas
contends that the testimony of three witnesses that Duarte and Rojas introduced
themselves as partners, while probative, was legally insufficient to establish
the existence of a partnership when Rojas in fact “did not want [Duarte] to be
a partner.”  We do not dispute that Rojas
testified that he did not want Duarte to be a partner.  However, Duarte adduced some evidence that both he and Rojas expressed an intent to
be partners.

Three witnesses testified that, in
different business settings, Rojas and Duarte introduced themselves as
partners.  Cecilia Ayers, a childhood
friend of Duarte’s, testified that Rojas and Duarte presented themselves as
partners to her and to her boss at a wine festival where they had installed an
ATM machine.  Likewise, Margaret McGuire
Luevano, a woman Duarte had known many years and one of the first people Duarte
solicited to buy an ATM machine, testified that Rojas and Duarte presented
themselves as partners to her at a restaurant where they had gathered to
finalize her purchase of an ATM machine. 
Finally, Jaime Romo, Luevano’s son and longtime friend of Duarte’s whom
Duarte had asked to apprise Luevano of the opportunity to buy an ATM machine,
testified that Rojas introduced himself as Duarte’s partner at the
aforementioned restaurant.[4]  Rojas attempts to diminish the impact of
Romo’s testimony by directing us to his testimony that when he referred to
Duarte as his “partner” he used the word as a term of endearment, not in its
legal sense.  (Rojas’s testimony,
however, finds no independent support
in the record and flies directly in the face of the testimony of the three
witnesses identified above, each of whom had no stake in the outcome of the
lawsuit.  The testimony of these
witnesses constitutes more than scintilla of evidence that both Duarte and
Rojas expressed an intent to be partners.

3.  Control

            The third factor under
the TRPA is participation in or right to participate in control of the
business, which, as noted above, has always been an important factor and “will
probably continue to be [one of] the most important under the [TRPA].”  Tex.Rev.Civ.Stat.Ann.
art. 6132b–2.03(a)(3), cmt.  “The right
to control a business is the right to make executive decisions.”  Ingram,
288 S.W.3d at 901.  Several sub-factors
are relevant to concluding that a party has the right to make executive
decisions, including:  (1) the exercise
of authority over the business’s operation; (2) the right to write checks on
the business’s checking account; (3) control over and access to the business’s
books; and (4) the receipt of and management of all of the business’s assets
and monies.  Id. at 901-02.  Rojas asserts
that Duarte did not have the right to make executive decisions because Duarte lacked
control over the business’s books and checkbook and over the entity the
partnership operated through when it began. 
We do not dispute that Rojas was in charge of the business’s accounting and
that he compiled the financial information to which Duarte had access.  However, there was evidence adduced at trial that
Duarte had the right to make, and did make, executive decisions.

            Duarte testified that he
exercised authority over some of the business’s operations.  According to Duarte, he was in charge of
sales, public relations, customer service, and the maintenance, repair, and
installation of the ATM’s.  Duarte also testified
that, although Rojas was “management,” they made some decisions
collaboratively.  For example, when
Duarte spotted a good location for an ATM, he discussed the opportunity with
Rojas and together they decided whether to proceed.  In addition, Duarte testified that he had complete
access to the business’s checking account and had the right to write checks
from the account.  In support of his
testimony, Duarte introduced into evidence the business account application
submitted to the bank in which he was identified as an owner and key individual.  The evidence undermines Rojas’s testimony
that Duarte was granted access to the account only for convenience.  Furthermore, Duarte testified that he had daily,
unrestricted access to the business’s books and records, which were kept at
Rojas’s home – to which Duarte had a key. 
According to Duarte, he also had access to monitor the ATM’s.  Duarte’s testimony and the evidence
introduced at trial constitutes more than scintilla of evidence that Duarte
participated in or had the right to participate in control of the business.

4.  Sharing Losses

            The fourth statutory
factor is sharing or agreeing to share losses or liability.  Tex.Rev.Civ.Stat.Ann.
art. 6132b–2.03(a)(4).  Although an
agreement to share losses or liabilities is not necessary to create a
partnership under the TRPA, the existence of such an agreement supports the
existence of a partnership.  Tex.Rev.Civ.Stat.Ann. art. 6132b–2.03(c);
Ingram, 288 S.W.3d at 902.  Rojas argues that there is no evidence that
Rojas shared losses because “there were no losses in the sense that expenses
exceeded income . . . .”  Although Rojas
is correct that there is no evidence that the business ever lost money, this is
not the relevant test.  The relevant test
is whether Duarte shared or agreed to share losses or liabilities.  See Tex.Rev.Civ.Stat.Ann. art.
6132b–2.03(a)(4).  There is evidence in
the record that Duarte agreed to share, and did share, liabilities.

            Duarte testified that he
and Rojas agreed to share equally the liabilities incurred in buying back ATM
machines from their customers, and, in accordance with their agreement, bought
back machines from Luevano and two gentlemen named Tovar and Betancourt.  These purchases were recorded, and
characterized as expenses in two of the three “split sheets” Rojas provided
Duarte.  These two “split sheets” reflect
that, after expenses were subtracted, including the repurchase of the ATM
machines, Duarte and Rojas shared equally in the profits.  When considered in the light most favorable
to the jury’s verdict, Duarte’s testimony and the “split sheets” prepared by
Rojas constitute more than scintilla of evidence that Duarte and Rojas agreed
to share, and did share, liabilities.  See City of Keller, 168 S.W.3d at 827.

5.  Contribution

The fifth and final factor is whether the alleged
partners contributed or agreed to contribute money or property to the business.  Tex.Rev.Civ.Stat.Ann.
art. 6132b–2.03(a)(5).  The TRPA defines
“property” as “all property, real, personal, or mixed, tangible or intangible,
or an interest in that property.”  Tex.Rev.Civ.Stat.Ann. art.
6132b–1.01(15).  Rojas contends that there
is no evidence that Duarte contributed “any money to the venture,” and that if
Duarte did contribute property in the form of a single ATM machine, the money
for that machine and the others was provided by entities controlled by
Rojas.  Duarte testified, however, that
he contributed money to the business and agreed to reinvest his profits back
into the business, which, by all accounts, did occur.  Duarte also testified that he contributed
several ATMs to the business.  Contrary
to Rojas’s assertion, Duarte’s testimony constitutes more than a scintilla of
evidence that he agreed to contribute, and did contribute, money and property
to the business.

6.  Conclusion

            We conclude that the
record contains more than a scintilla of evidence in support of each of the
five factors of the TRPA.  Though the
evidence as to each and every factor may not be conclusive, it is nonetheless
sufficient to enable reasonable
and fair-minded people to differ in their conclusions.  As established above, there is ample evidence in the record that Duarte
shared profits and control over some aspects of the business, the two factors
that the statutory comments to the TRPA state that will probably continue to
the most important factors in determining whether a partnership exists.  See Tex.Rev.Civ.Stat.Ann. art. 6132b–2.03
cmt.  Accordingly, we conclude that the
evidence is legally sufficient to support the jury’s finding of a
partnership.  Rojas’s first issue is
overruled.

BREACH OF
FIDUCIARY DUTY

 

            In his second issue,
Rojas argues that he did not breach any fiduciary duty to Duarte because there
was no partnership from which a fiduciary duty arose.  This argument fails, however, because as
established above, the evidence is legally sufficient for the jury to have
found that Duarte and Rojas were partners. 
Rojas’s second issue is overruled.

DAMAGES

            In his third and final
issue, Rojas argues that the jury’s award of $119,000 in damages is erroneous
because “[t]here is absolutely no evidence in the record to support” the jury’s
finding that this amount was the value of half of the partnership on May 31,
2005.  In so arguing, Rojas asserts that
nothing in his financial exhibits or in the report from Duarte’s business
valuation expert, who opined that the value of the business was $420,000 as of
December 31, 2008, provided the jury with a rational basis to calculate damages
of $119,000.  We agree.

Applicable Law

As a general rule, the jury has broad
discretion to award damages within the range of evidence presented at trial, as
long as there is a rational basis for the jury’s calculation.  Gulf
States Utils. Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002); Mayberry v. Tex. Dep’t of Agric., 948
S.W.2d 312, 317 (Tex.App.--Austin 1997, writ denied).  If there is a rational basis for the jury’s
calculation, its damages award will not be disregarded and set aside, even if
it is unclear in the record exactly how the jury calculated the award.  First
State Bank v. Keilman, 851 S.W.2d 914, 930 (Tex.App.--Austin 1993, writ
denied).  If, however, there is no
rational basis for the jury’s calculation, i.e.,
a calculation that is not authorized or supported by, or properly extrapolated
from, the evidence presented at trial, the jury’s damages award will be
disregarded and set aside.  See id. at 930-31 (damages neither
authorized nor supported by the evidence may be disregarded).

Discussion

In this case, there is no doubt that Duarte
suffered some amount of damages. 
However, there is no rational basis for the jury’s award of $119,000 in
damages.  Neither of the parties have
been able to explain in their briefs or at oral argument how the jury arrived
at that figure.  In his brief, and at
oral argument, Duarte offered several theories as to how the jury could have
arrived at $119,000, but his attempts to justify the amount do not find
reasonable support in the record.

The evidence presented by Duarte provided a
relatively precise method for calculating the value of the partnership as of one
date and one date only – December 31, 2008. 
In opining that the value of the partnership was $420,000 as of that
date, Duarte’s expert relied, in large part, on the business’s federal income
tax returns, general ledger reports, and financial statements for the four-year
period beginning December 31, 2005 and ending December 31, 2008.  These records contained a variety of numbers
to which Duarte’s expert applied several tools of valuation analysis.  He “normalized” assets, income, and cash flow
by adjusting for items not representative of the business’s value as a
going-concern, applied a discount rate to the “normalized” figures, and added
back cash in excess of that required to sustain the business’s operations.  As is evident, Duarte’s expert did an
excellent job of identifying for the jury the financial aspects of the business
that he considered important in determining its value, and providing it with
his calculation, the source of the numbers inputted into his calculation, and
the result of his calculation.  The
problem is that the data relied upon by Duarte’s expert and the valuation methods
he used are pertinent only to the value of the partnership as of December 31,
2008.  Nothing in the expert’s testimony
or report identifies any other date on which the value of the partnership was, or
could have been, calculated by using the same data and methods.  Given these constraints, the jury’s
determination that $119,000 was the value of Duarte’s partnership as of May 31,
2005 was not authorized or supported by the evidence presented at trial.  Moreover, as a result of these shortcomings,
the jury lacked sufficient data from which to extrapolate properly that the
value of the partnership was $119,000 as of May 31, 2005.

Because Duarte failed to prove the amount of
his damages with reasonable certainty, the evidence is legally insufficient to
support the jury’s damages award.

DISPOSITION

            Rojas requests that we reverse the judgment
of the trial court and render judgment that Duarte take-nothing.  Given our conclusion that the evidence was legally
insufficient to support the jury’s damages award, the traditional relief would
be to reverse and render a take-nothing judgment.  See
Larson v. Cactus Util. Co.,730 S.W.2d
640, 641 (Tex. 1987)(articulating general rule that when an appellate court
finds the evidence legally insufficient to support a damages verdict, the court
should reverse and render a take-nothing judgment as to that amount).  However, pursuant to Rule of Appellate
Procedure 43.3, we have broad discretion to reverse and remand a case for a new
trial in the interests of justice.  See Tex.R.App.P.
43.3 (providing for such a disposition); Fanning
v. Fanning, 847 S.W.2d 225, 226 (Tex. 1993)(Opin. on reh’g)(appellate
courts have broad discretion to reverse and remand in the interests of
justice).

Remand in the interests of justice is
appropriate in a case where the plaintiff has proved liability and that he has sustained
some loss as result, but has failed to prove the amount of damages with reasonable certainty.  See
Williams v. Gaines, 943 S.W.2d 185, 193 (Tex.App.--Amarillo 1997, writ
denied)(concluding that, although no evidence was presented that met the
definition of fair market value in the jury’s instructions, remand for a new
trial on damages was appropriate in the interests of justice because the jury
found that the parties had an agreement, that the defendant breached the agreement,
and that the plaintiff sustained some loss as a result); A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.,798 S.W.2d
606, 616 (Tex.App.--Dallas 1990, writ denied)(concluding that, although
plaintiff did not prove its damages with reasonable certainty, there was some
evidence which showed damages generally, and interests of justice, therefore,
required remand for new trial).  Here,
the jury found the existence of a partnership between Duarte and Rojas and that
although Duarte voluntarily withdrew from the partnership, he was not
adequately compensated by Rojas and sustained damages as a result.  Under these circumstances, the
interests of justice require that Duarte be given an opportunity to prove the
amount of his damages with reasonable certainty.

CONCLUSION

            Accordingly,
we reverse that portion of the trial court’s judgment awarding $119,000 to
Duarte and remand this case to the trial court for a new trial as to Duarte’s
damages only as of May 31, 2005.  In all
other respects, the judgment of the trial court is affirmed.

 

 

November
30, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Antcliff, J., and Medrano, Judge

Medrano,
Judge (Sitting by Assignment)











[1]
Duarte was joined by his wife, Elizabeth. 
They sued Rojas and Rojas’s wife, Carla, and some of the entities
through which the business operated, i.e.,
ATM’s of El Paso, Dancar Enterprises,
Inc., and Document Processing Systems, Inc. 
For the sake of simplicity and convenience, we refer to the parties as
“Duarte” and “Rojas.”





[2]
Although the TRPA expired on January 1, 2010, it was in effect during all of
the events made the basis of this lawsuit.  See
Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 1, 1993 Tex Gen. Laws 3887,
3890 (expired January 1, 2010) (former Tex.Rev.Civ.Stat.Ann.
arts. 6132b–2.02(a), 6132b–2.03(a)).  The
Texas Business Organizations Code now applies to all partnerships, regardless
of their formation date.  See generally Tex.Bus.Orgs.Code Ann. § 152.001-.914 (West 2012), Ingram, 288 S.W.3d at 894 n.4.





[3]
As noted above in footnote number one, Dancar Enterprises was one of the
entities through which the ATM business operated.





[4]
In his brief, Rojas contends that his
introduction to Romo as Duarte’s partner “cannot be said to [sic] a sufficient
expression of intent to someone you’ve never before met.”  Rojas, however, cites no authority for this
proposition.